IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AKEM HOLDEN, | § | CIVIL ACTION NO. 21-cv-01661 |
| *Plaintiff,* | § § | SECTION: "D" (2) |
| v. | § § | DISTRICT JUDGE: WENDY B. |
| SERCO INC., JOHN C. | § | VITTER |
| TEDDERHAIMFIELD AND ACE | § | |
| AMERICAN INSURANCE COMPANY | § § | MAGISTRATE JUDGE:  DONNA |
| | § | PHILLIPS CURRAULT |
| *Defendants.* | | JURY DEMANDED |

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Serco Inc., ACE American Insurance Company now known as Chubb Insurance and John Tedder-Hairfield (collectively "defendants") submit the following Memorandum in Support of Motion for Summary Judgment because no genuine issue of material fact exists and defendants are entitled to dismissal as a matter of law for the reasons set forth herein.

## I.   OVERVIEW AND INTRODUCTION

This lawsuit stems from a motor-vehicle accident that occurred when a vehicle driven by Akeem Holden ("Plaintiff") **rear-ended** a parked 2016 Ford F250 emergency response vehicle ("Serco vehicle") whose driver was clearing roadway debris he was dispatched to clear.

Serco Inc. is directly contracted with the Louisiana Department of Transportation and Development ("La. DOTD") to provide roadway assistance and motorist safety as part of the La. DOTD's Motorist Assistance Program ("MAP").  John Tedder-Hairfield was an employee of Serco Inc. acting within the course and scope of his employment with Serco Inc. at the time he was dispatched to the scene to clear roadway debris and at the time Plaintiff rear-ended his vehicle.

More specifically, Tedder-Hairfield was dispatched to the eastbound Twin Span to locate and remove a metal ladder that had somehow found its way into the left travel lane. Tedder-Hairfield immediately drove his Serco vehicle to the scene. The Serco vehicle's full arrow-board and emergency lights were activated at all times while on the Twin Span. After locating the ladder and bringing his vehicle to a stop in the left lane of travel to protect himself and other motorists, he immediately exited his vehicle and began removing the ladder from the left travel lane. As he was nearing completion of this task, the Serco vehicle was rear-ended by Plaintiff's vehicle. Plaintiff cannot refute the fact that the Serco vehicle's arrow-board and emergency lights were activated at the time of the accident. Yet, he claims he did not see the Serco vehicle or its fully illuminated arrow-board and emergency lights until it was too late to avoid the accident.

Under La. R.S. 32:24, Tedder-Hairfield was an emergency responder and the Serco vehicle was an authorized emergency vehicle that were (1) responding to an emergency call; (2) parked; and (3) using visual signals to warn all following motorists. Therefore, under La. R.S. 32:24, Tedder-Hairfield and his actions with the Serco vehicle cannot be liable to Plaintiff absent a finding that his actions were in a "reckless disregard for the safety of others". Plaintiff simply cannot do so.

Tedder-Hairfield and his actions with the Serco vehicle at all relevant times were reasonable, necessary and in the interest of public safety. But even if some action of Tedder-Hairfield was arguably negligent (which Defendants dispute), his actions in no way rise to the level of "reckless disregard for the safety of others". Stated differently, even if some material issue of fact exists as to Tedder-Hairfield's negligence (which Defendants dispute), no material issue of fact exists that would allow Plaintiff to prove that Tedder-Hairfield's actions were in "reckless disregard for the safety of others". Plaintiff simply cannot meet this heavy burden of proof, which

is far greater than a typical negligence standard.  Therefore, under the undisputed facts of this case, Tedder-Hairfield and Serco Inc. cannot be held liable for Plaintiff's claims.  Defendants are thus entitled to the grant of summary judgment in their favor and dismissal with prejudice as a matter of law.

## II.    STATEMENT OF FACTS

On January 7, 2020, John Tedder-Hairfield was dispatched to I-10 East on the Twin Span between New Orleans and Slidell due to debris, a ladder, being reported in the left travel lane.[1] Tedder-Hairfield was dispatched to remove the ladder from the interstate.[2]  He was dispatched by his Serco, Inc. supervisor, who was monitoring the Louisiana State Police radio frequency pursuant to authority granted by the Louisiana State Police.[3]  As recognized by the Louisiana State Police, such direct communications "during emergency incidents and joint operations would significantly increase response capabilities while reducing response times, thereby providing greater safety for first responders  and the motoring public."[4]

At the time of dispatch, Tedder-Hairfield was fulfilling his job duties as an employee of Serco Inc.[5]  Serco Inc. is contracted with the Louisiana Department of Transportation and Development ("La. DOTD") to implement the Motorist Assistance Patrol ("MAP") program.[6]   In fact, the contract is entitled "Motorist Assistance Patrol (MAP) Operations for the Department of Transportation and Development" and the "SCOPE OF SERVICE" provision at paragraph 2 of the contract requires Serco Inc. to "perform Motorist Assistance Patrol statewide on designated

---

[1] Exhibit 1, Deposition of Brittany Higdon, pgs. 18-19, lns. 15-16.
[2] Exhibit 2, Deposition of John Tedder-Hairfield, pg. 63, lns. 1-4.
[3] Exhibit 1, Deposition of Brittany Higdon at pgs. 114-115, lns. 11-19 and the Affidavit of Richard Ardis of Serco attached as Exhibit 3 at paragraph 16 with the Louisiana State Police letter of authority attached to that affidavit as Exhibit C.
[4] Id.
[5] Exhibit 3, Affidavit of Richard Ardis, paragraph 21.
[6] Exhibit 3, Affidavit of Richard Ardis, paragraph 4 and contract between Serco Inc and La. DOTD attached as Exhibits A and B to the affidavit.

segments of state and federal highways" in accordance with the terms of the contract.[7]  The specific terms of the contract require Serco Inc. to perform various actions,  including but not limited to the following which have been taken verbatim from paragraph 2.1 of the contract:

- Accurate communication of incident details and traffic conditions to the TMC [Traffic Management Center]

- Clear and re-open travel lanes as quickly as possible

- Deliver traveler-focused and performance-driven Motorist Assistance Patrol (MAP) operational services which facilitate reliable and safe movement of people and goods within the state of Louisiana

- Minimize the impacts of roadway incidents

- Assist incident and emergency response agencies and personnel[8]

Similarly, the contract also contains "ATTACHMENT A: STATEMENT OF WORK", and at paragraph 5 of the attachment Serco Inc. is required to perform certain "ROADWAY SERVICES", including but not limited to the following which have been taken verbatim from that paragraph:

- Traffic control when first on-site of an incident

- Remove minor debris from the highway[9]

As such, Serco Inc. vehicles are authorized emergency vehicles when responding to incidents on Louisiana and Interstate roadways pursuant to the La. DOTD MAP program.[10]  Even further, the La. DOTD describes its MAP operators as follows:

---

[7] Exhibit 3, Affidavit of Richard Ardis, paragraph 6 and contract between Serco Inc and La. DOTD attached as Exhibit A to the affidavit, page 1, paragraph 2.
[8] Exhibit 3, Affidavit of Richard Ardis, paragraph 7 and contract between Serco Inc and La. DOTD attached as Exhibit A to the affidavit, page 1, paragraph 3.
[9] Exhibit 3, Affidavit of Richard Ardis, paragraph 8 and contract between Serco Inc and La. DOTD attached as Exhibit A to the affidavit, page 16, paragraph 5.
[10] Exhibit 3, Affidavit of Richard Ardis, paragraph 11 and contract between Serco Inc and La. DOTD attached as Exhibits A and B to the affidavit.

MAP operators are qualified first responders, quick thinkers, and customer-oriented. In addition to assisting with vehicle problems, these contracted employees are often the first to arrive at the scene of an accident and must calm motorists in times of high stress. Operators are also responsible for coordinating through radio dispatch the timely arrival of emergency medical services, tow trucks, law enforcement, and other service providers.[11]

At the same time Tedder-Hairfield was dispatched, local law enforcement was also dispatched to the scene to assist with debris removal.  Before the police could arrive, Tedder-Hairfield was already at the scene clearing the ladder from the roadway.[12]  Louisiana State Trooper Vincent Cyprian testified that he was initially dispatched to a ladder in the roadway, and while in route, he was alerted that a Serco/DOTD vehicle had been struck by another vehicle.[13]

Notably, the actions of Tedder-Hairfield on January 7, 2020 were monitored via video camera by Brittany Higdon of the La. DOTD Traffic Management Center ("TMC").[14]  After being notified of the debris, she was able to locate the debris via the DOTD traffic cameras.[15] Through these traffic cameras she watched Tedder-Hairfield's actions and the subject accident.   The debris spotted by Higdon was a ladder, completely within the left lane of I-10 east on the Twin Span, with no part of it in the middle lane or shoulder.[16]

Higdon watched Tedder-Hairfield drive onto the I-10 Twin Span, and remain in the left hand lane as he was driving to the scene of the debris.  This process took approximately 3-4 minutes.   During this entire time, she observed Tedder-Hairfield traveling 20 mph below the posted speed limit of 70 mph, with his Serco vehicle emergency lights, light bar, and arrow board with right arrow signal illuminated; the purpose of the right arrow signal was to alert following

---

[11] See http://wwwapps.dotd.la.gov/administration/announcements/announcement.aspx?key=18986.
[12] Exhibit 4, Deposition of Trooper Vincent Cyprian, pgs. 5-6, lns. 19-5.
[13] Exhibit 4, Deposition of Trooper Vincent Cyprian, pg. 25, lns. 12-15.
[14] Exhibit 1, Deposition of Brittany Higdon, pgs. 23-24, lns. 24 – 10.
[15] Exhibit 1, Deposition of Brittany Higdon, pgs. 21-22, lns. 2-10.
[16] Exhibit 1, Deposition of Brittany Higdon, pg. 21-22, lns. 2-10 and pg. 23-24, lns. 24 - 10

motorists to move out of the left-hand lane where the debris was located.[17]  The activated lights

flash amber and red; and red and white.[18]

A photograph of an exemplar Serco vehicle with light system is imbedded below.  The

various lights and warning systems are readily apparent on the rear of the truck bed, directly on

top of the cab and raised over the cab.  The lights raised over the cab are often described as an

arrow board[19]:





---

[17] Exhibit 1, Deposition of Brittany Higdon, pgs. 24 - 26, lns. 3 -22; and Exhibit 2, Deposition of John Tedder-Hairfield, pg. 81, lns. 10-17.
[18] Exhibit 2, Deposition of John Tedder-Hairfield, pg. 116, lns. 13-17.
[19] This photograph was taken at the scene, after the accident, of another Serco Inc. vehicle that responded to the plaintiff's accident in rear-ending the Serco vehicle driver by Tedder-Hairfield.  This photograph was attached to the deposition of John Tedder-Hairfield as Exhibit 7 to that deposition.

Two photographs of the Serco vehicle struck in the rear by Plaintiff are imbedded below. These photographs were taken after the accident. Note the extensive DOTD and MAP badging on the side and rear of the Serco vehicle.[20]:





---

[20] These photographs were taken after the accident and were attached to the deposition of John Tedder-Hairfield as part of Exhibit 11 to that deposition.

Tedder-Hairfield stopped the Serco vehicle in the left-hand lane when he arrived at the scene of the debris, with all lights and warning systems still fully activated.[21] He immediately ran to the ladder and began throwing it to the shoulder.[22] Tedder-Hairfield had parked his vehicle in the left lane to stop any other vehicles from running over the ladder and to protect himself while he entered the left lane of the interstate to remove the ladder from the travel lane as quickly as possible.[23]

Tedder-Hairfield was nearly finished with the debris removal when the accident occurred. The Serco vehicle had been stopped in the left lane for 1-2 minutes before the accident.[24] From the time Tedder-Hairfield arrived at the scene, until the time of the rear-end impact by Plaintiff's vehicle, Higdon witnessed more than twenty (20) vehicles pass the Serco vehicle.[25] Even Plaintiff himself testified that another vehicle was able to avoid rear-ending the Serco vehicle.[26]

Plaintiff received two traffic citations and Tedder-Hairfield was not issued a citation.[27] One of the tickets given to plaintiff was for violation of La. R.S. 32:125, "Procedure on approach of an authorized emergency vehicle; passing a parked emergency vehicle".[28]  Plaintiff was driving the 70-mph speed limit before accident, and at impact he believes he was driving 65 or 67 mph. [29] Plaintiff further told the investigating officer that he never saw the Serco vehicle's emergency lights.[30] Yet, he also admitted in his deposition that he cannot refute Tedder-Hairfield's testimony that the arrow board was activated at the time of the accident.[31]

---

[21] Exhibit 1, Deposition of Brittany Higdon pg. 30, lns. 11 - 23 and pg. 31, lns. 8 - 17.
[22] Exhibit 1, Deposition of Brittany Higdon pg. 31, lns. 18 - 22.
[23] Exhibit 2, Deposition of John Tedder-Hairfield, pg. 89, lns. 4-13.
[24] Exhibit 1, Deposition of Brittany Higdon, pgs. 33-34, lns. 25 - 9.
[25] Exhibit 1, Deposition of Brittany Higdon, pg. 35, lns. 13 – 22.
[26] Exhibit 5, Deposition of Akeem Holden, pg. 73, lns. 2-3.
[27] Exhibit 4, Deposition of Trooper Vincent Cyprian, pg. 64, lns. 14-20.
[28] Exhibit 4, Deposition of Trooper Vincent Cyprian, pgs. 65-68, lns. 8-18.
[29] Exhibit 5, Deposition of Akeem Holden, pg. 52, lns. 19-25 and pgs. 59-60, lns. 21-1.
[30] Exhibit 4, Deposition of Trooper Vincent Cyprian, pgs. 37-38, lns. 2-13.
[31] Exhibit 5, Deposition of Akeem Holden, pg. 70, lns. 5-12.

## III.  <u>LAW AND ARGUMENT</u>

### a.  **Summary Judgment Standards**

Fed. R. Civ. P. 56, which governs summary judgment, "provides that the court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Lester v. Caddo Parish*, 2017 WL 6610329, *3 (W.D. La. Dec. 12, 2017); citing Fed. R. Civ. P. 56(a).

If the movant demonstrates a lack of evidence to establish a material fact or that movant is otherwise legally entitled to the relief requested, "then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists."  *Lester*, 2017 WL 6610329 at *3; *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Little v. Air Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  "A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by proving only 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Lester, supra*, *citing Little*, 37 F.3d at 1075.

"Additionally, in deciding a summary judgment motion, courts 'resolve factual controversies in favor of the non-moving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts.'"  *Lester, supra*, *citing Little*, 37 F.3d at 1075.  "Courts 'do not, however, in the absence of any proof, assume that the non-moving party could or would prove the necessary facts.'"  *Lester, supra*, *citing Little*, 37 F.3d at 1075.

**b. At the time of the January 7, 2020 accident, John Tedder-Hairfield was Authorized Emergency Personnel and the Serco Vehicle was an Authorized Emergency Vehicle.**

La. R.S. §32:1 defines an "authorized emergency vehicle" to include "emergency vehicles of municipal departments or public service corporations as are designated or authorized by the secretary of the Department of Transportation and Development."   The La. DOTD clearly authorized Serco Inc. to operate as emergency response vehicles because Serco Inc. was expressly tasked by the La. DOTD, via contract, to implement the MAP program and its emergency response requirements.[32]

Not only is Serco Inc. expressly authorized by the La. DOTD to operate as emergency response vehicles, but the contractual duties the La. DOTD places on Serco Inc. make it clear that Serco Inc. is a public service corporation as contemplated by La. R.S. §32:1.   The La. DOTD requires Serco Inc. to provide public safety as a public service corporation, as is evidenced through a letter dated August 8, 2019 from Captain, John E. Riles, Troop Commander – Troop L of the Louisiana State Police where he states that "[the joint operation of State Troopers with Serco Inc.] would significantly increase response capabilities while reducing response times, thereby providing greater safety for first responders and the motoring public."[33]  Serco Inc. also has written approval to access the Louisiana State Police Troop L Dispatch 1 radio frequency.  This authority was given so that Serco Inc. could "communicate directly" with Louisiana State Police troopers "during emergency incidents and joint operations."[34]

The fact that Serco vehicles and their operators are dispatched directly to the scene of accidents and other emergency situations (as was the case here) further supports this obvious

---

[32] Exhibit 3, Affidavit of Richard Ardis, paragraph 4 and contract between Serco Inc and La. DOTD attached as Exhibits A and B to the affidavit.
[33] Exhibit 3, Affidavit of Richard Ardis, paragraph 16 and Louisiana State Police letter attached as Exhibit C to the affidavit.
[34] *Id*.

conclusion.  Also consider the fact that one express term of the contract with La. DOTD requires Serco Inc. to perform "traffic control when first on-site of an incident".[35]  Further consider that La. DOTD describes MAP operators and thus Serco Inc. employees as "qualified first responders" who are "…often the first to arrive at the scene of an accident…"[36]  Serco Inc. employees dispatched directly to the scene of an accident or incident, and who often arrive before any other personnel (as was the case here), cannot be considered as performing anything other than the operation of an "authorized emergency vehicle" for an emergency response.

The totality of the arrangement between La. DOTD and Serco Inc. is also worthy of note. Before the subject accident on January 7, 2020, Serco Inc. contracted with La. DOTD to perform emergency assistance services under the MAP program.  In other words, the La. DOTD contracted with Serco Inc. to provide and perform certain emergency roadway services that La. DOTD would have otherwise provided itself.

The MAP program was created by the La. DOTD to assist motorists and improve traffic flow.  The La. DOTD contracted with Serco Inc. to achieve these goals.  In fact, and directly to the point, the contract requires that Serco Inc. employees are to provide essential roadway emergency services such as removing "minor debris from the highway" – precisely what Tedder-Hairfield was doing at the time of the accident.  Moreover, Serco Inc. employees are required by contract to perform various emergency assistance activities on behalf of the La. DOTD such as (1) shorten the duration of incidents; (2) prevent secondary crashes; (3) clear and re-open travel lanes; and (4) assist incident and emergency response agencies and personnel.[37]  Each of these emergency

---

[35] Exhibit 3, Affidavit of Richard Ardis, paragraph 8 and contract between Serco Inc and La. DOTD attached as Exhibit A to the affidavit, page 16, paragraph 5.
[36] See http://wwwsp.dotd.la.gov/Inside_LaDOTD/Divisions/Operations/MAP/Pages/default.aspx.
[37] Exhibit 3, Affidavit of Richard Ardis, paragraph 15 and contract between Serco Inc and La. DOTD attached as Exhibit B to the affidavit, pages 7-8, paragraph 6.1.

assistance activities is directly designed to provide for and protect the general public.  Tedder-Hairfield was assisting in all phases of these emergency prevention activities when Plaintiff crashed into the rear of the Serco vehicle with a flashing arrow board and other emergency warning lights fully illuminated.

In sum, the undisputed facts show that Serco Inc. vehicles and their operators are authorized emergency personnel and authorized emergency vehicles pursuant to La. R.S. 32:1 when dispatched and responding to emergency roadway issues such as the debris removal in this case.

### c.  La. R.S. § 32:24 requires Plaintiff to prove that Tedder-Hairfield's actions were in reckless disregard for the safety of others, and he has no such proof.

This matter was removed to this Court on the basis of diversity of citizenship jurisdiction.[38] With no federal question of law at issue, substantive Louisiana state law applies.[39]

Louisiana Revised Statute §32:24 sets forth the situations wherein an authorized "emergency vehicle" is <u>not</u> required to follow typical traffic laws.  La. R.S. §32:24 states:

A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

B. The driver or rider of an authorized emergency vehicle may do any of the following:

(1) Park or stand, irrespective of the provisions of this Chapter.

(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.

(3) Exceed the maximum speed limits so long as he does not endanger life or property.

---

[38] See Notice of Removal, Rec. Doc. 1.
[39] 28 U.S.C. § 1652.

(4) Disregard regulations governing the direction of movement or turning in specified directions.

C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider's whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

The Louisiana Supreme Court performed a thorough analysis of La. R.S. §32:24 in *Lenard v. Dilley*. In sum, the Louisiana Supreme Court held that if the provisions of subsections A, B and C of La. R.S. §32:24 apply to a driver in an accident, then that driver "will be held liable only for his conduct which constitutes **reckless disregard** for the safety of others."[40] The *Lenard* case addressed a plaintiff who rear-ended an ambulance parked partially on the interstate as its driver attended to someone injured in an accident on the interstate -- making the facts of Lenard extremely analogous to the case at hand. The Court then outlined a three-pronged test to determine when this heightened liability threshold applies to a plaintiff's cause of action in a matter involving a stopped or parked vehicle:

The emergency vehicle must be authorized and:

1. The driver must be responding to an emergency call;

2. The accident or incident in question must arise out of the emergency vehicle driver's parking or standing; and,

3. The driver must make use of audible **or** visual signals sufficient to warn motorists of their approach.[41]

---

[40] *Lenard v. Dilley*, 2001-1522 (La. 1/15/02), 805 So. 2d 175 (emphasis added).
[41] *Lenard v. Dilley*, 2001-1522 (La. 1/15/02), 805 So. 2d 175, 180 (emphasis added).

Once these three prongs are met, a plaintiff is required to prove that the defendant driver acted with a "reckless disregard for the safety of others."

The Louisiana Supreme Court has stated that "'reckless disregard' is, in effect, 'gross negligence'".[42] Gross negligence has been explained by the Court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise."[43] In *Rabalais v. Nash*, the Louisiana Supreme Court expounded on the concept of "gross negligence" as follows:

> Gross negligence has also been termed the "entire absence of care" and the "utter disregard of prudence, amounting to complete neglect of the rights of others." Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.[44]

The relevant facts of this case are undisputed. At the time of the accident, Tedder-Hairfield was an authorized emergency personnel who was operating an emergency response vehicle after being dispatched to remedy an emergency roadway condition. All of these actions were requested and authorized by the La. DOTD. More specifically,

(1) Tedder-Hairfield was responding to an emergency situation of roadway debris

that was called in directly to the Louisiana State Police for immediate response;

(2) Tedder-Hairfield stopped the Serco vehicle in the left lane of I-10 on the Twin

Span to protect other vehicles and himself as he removed the debris/ladder from the

left hand lane; and

---

[42] *Rabalais v. Nash*, 2006-0999 (La. 3/9/07), 952 So.2d 653, 658.
[43] *Rabalais v. Nash*, 2006-0999 (La. 3/9/07), 952 So.2d 653, 658.
[44] *Rabalais v. Nash*, 2006-0999 (La. 3/9/07), 952 So.2d 653, 658 (internal citations omitted)

(3) All emergency lights, including the light bar and arrow-board, were activated and illuminated on the Serco vehicle.

The undisputed facts show that Tedder-Hairfield was acting in accordance with all requirements of La. R.S. §32:24 and all components of the three-pronged test enunciated by the Louisiana Supreme Court in *Lenard* have been met. Accordingly, the heightened liability threshold of "reckless disregard for the safety of others" applies to Tedder-Hairfield's actions. Plaintiff cannot meet this heightened liability threshold and burden of proof as there is no issue of fact to show that Tedder-Hairfield's actions were "grossly negligent".

Not surprisingly, once the heightened liability threshold is applied, Louisiana courts typically conclude that summary judgment is appropriate for the defendant driver because the plaintiff cannot show that the defendant acted with "reckless disregard for the safety of others." The following cases are most instructive:

In *Thigpen v. Lacombe*, the Louisiana First Circuit Court of Appeals affirmed the trial court's grant of summary judgment which dismissed the emergency provider from all liability. In that case, plaintiff rear-ended a fire truck that was stopped in a lane of travel to allow firefighters to exit the truck "in an effort to ensure administration of emergency responder service as quickly as possible".[45] The Court held that (1) the fire truck was an authorized emergency vehicle; (2) the stopping of the truck in a lane of traffic was within the ambit of the emergency vehicle statute; (3) the driver of the fire truck was entitled to assert the immunity set forth in emergency vehicle statute; (4) it was plaintiff's burden at trial to prove the driver of the fire truck acted with reckless disregard for safety of others; and, (5) the driver of the fire truck did not drive truck with reckless

---

[45] *Thigpen v. Lacombe*, 2016-1612 (La. App. 1 Cir. 8/29/17), 226 So. 3d 1138, 1142.

disregard for the safety of others when parking the fire truck in a lane of traffic.[46]   Also of

significant note was the court's description of the purpose of La. R.S. §32:24:

> The obvious purpose of La. R.S. 32:24 is to provide protection to drivers of
> authorized emergency vehicles who, because of the nature of their obligations, in
> responding to emergency situations may have to make unusual, unexpected, and
> sudden movements.  The "high social value and premium placed on protection and
> rescue efforts" is well established in our law.[47]

The relevant facts of *Thigpen,* and its conclusions, mirror the facts of the subject lawsuit.

Emergency personnel drove an authorized emergency vehicle to the scene and stopped in a lane

of travel upon arrival at the scene.   After an initial assessment of the scene and before the

emergency personnel had any opportunity to move the emergency vehicle, the emergency vehicle

was struck in the rear by the plaintiff's vehicle.   *Thigpen* makes it utterly clear that a high and

enhanced burden of proof falls to the Plaintiff to prove that the emergency personnel acted in

reckless disregard for the safety of others.   In the case at hand, Plaintiff's lack of knowledge and

inability to refute any of the testimony of all other witnesses is fatal to Plaintiff's claims.   Any

argument that Tedder-Hairfield should have parked on the shoulder and/or used traffic cones

would at most suggest generic negligence (which Defendants deny).   Tedder-Hairfield had all of

the Serco vehicle's warning lights illuminated and parked the vehicle in the left lane of travel to

protect other motorists from the debris and to protect himself as he moved the debris to the shoulder

of the interstate as quickly as possible.   In no way could such actions amount to "reckless disregard

for the safety of others" or "gross negligence".   Moreover, the *Thigpen* court aptly recognized that

the nature of an emergency responder's obligations might require that individual to make "unusual,

unexpected and sudden movements".[48]   Even if that were arguably the case here (which

---

[46] *Thigpen v. Lacombe*, 2016-1612 (La. App. 1 Cir. 8/29/17), 226 So. 3d 1138.
[47] *Thigpen v. Lacombe*, 2016-1612 (La. App. 1 Cir. 8/29/17), 226 So. 3d 1138 at 1147.
[48] *Thigpen v. Lacombe*, 2016-1612 (La. App. 1 Cir. 8/29/17), 226 So. 3d 1138 at 1147.

-16-

Defendants deny), such conduct would still fail to fulfill plaintiff's enhanced burden of proof. Accordingly, this Court should follow the rationale of the *Thigpen* and dismiss the claims of Plaintiff.

In *Brooks v. City of Jennings*, the Louisiana Third Circuit Court of Appeals similarly affirmed the trial court's grant of summary judgment in favor of an emergency responder. In that case, certain city police officers were involved in a high-speed chase of the plaintiff, whose vehicle ended up leaving the roadway and ejecting plaintiff, resulting in serious personal injuries. The city police officers had their emergency lights and sirens activated during the chase. The court concluded that the actions of the officers clearly fell within the protections of La. R.S. §32:24 and thus their actions "must be judged under the 'reckless disregard' or 'gross negligence' standard."[49] Plaintiff argued that the officers violated these standards because of "their failure to strictly adhere to department policy governing pursuit."[50] The court disagreed, noting that the issue to be decided was not whether the officers failed to comply with department policy.[51] The issue was whether plaintiff had evidence that the officers acted with recklessness or gross negligence. The court found that plaintiff had no such evidence and granted summary judgment in favor of the defendant even though "...the officers may not have followed the best course of action..."[52]

In the case at hand, Plaintiff may argue that Tedder-Hairfield committed certain actions and inactions that constitute negligence. Plaintiff might also argue that Tedder-Hairfield did not engage in the best course of action. Plaintiff might even offer arguments that Tedder-Hairfield violated certain Serco Inc. operational standards or policies. But even if all of those arguments were correct (which Defendants dispute), Plaintiff still cannot come forward with the requisite

---

[49] *Brooks v. City of Jennings*, 2006-680 (La. App. 3rd. Cir. 11/22/06), 944 So.2d 768, 773.
[50] *Brooks v. City of Jennings*, 2006-680 (La. App. 3rd. Cir. 11/22/06), 944 So.2d 768, 773.
[51] *Brooks v. City of Jennings*, 2006-680 (La. App. 3rd. Cir. 11/22/06), 944 So.2d 768, 773.
[52] *Brooks v. City of Jennings*, 2006-680 (La. App. 3rd. Cir. 11/22/06), 944 So.2d 768, 773 at 774.

evidence of "reckless disregard" or "gross negligence".  Tedder-Hairfield acted reasonably and with most legitimate purposes in parking his Serco vehicle in the left lane of travel: (1) protection of other motorists from hitting the debris and injuring their cars, themselves, or other motorists; and (2) protection of his own life as he would have to walk into the left lane of an active interstate to move the debris to the shoulder of the road.  If Tedder-Hairfield had not parked his vehicle in the left hand lane of travel to protect himself, Plaintiff would have hit Tedder-Hairfield and almost certainly killed him as Plaintiff admitted that he was traveling at a speed of close to 70 miles per hour when he struck the rear of the Serco vehicle.[53]  These actions of Tedder-Hairfield do not even hint of "reckless disregard" or "gross negligence" and it would be disingenuous for Plaintiff to even suggest otherwise.

In _Jones v. American Alternative Ins. Corp._, the Louisiana First Circuit Court of Appeals affirmed the trial court's grant of summary judgment in favor of an ambulance driver.  Plaintiff was riding as a passenger in the cab of the ambulance because she was accompanying the patient riding in the back of the ambulance who was being transported from one hospital to another.  When the ambulance driver approached an intersection and encountered a red light, the driver stopped and then went through the intersection on a red light.  The ambulance's emergency lights were activated at this time.  Unfortunately, the ambulance was hit by another vehicle with the right of way and plaintiff was injured as a result.  After noting the undisputed evidence that the ambulance's emergency lights were activated, the court deemed La. R.S. §32:24 applicable and dismissed the suit because "no matter what his actions, the signals used by [the ambulance driver] were sufficient to warn other motorists stopped at the intersection…"[54]   Even though Plaintiff might have been correct in her contention that the ambulance driver was "inattentive", the court

---

[53] Exhibit 5, Deposition of Akeem Holden, Pg. 52 lns. 19-25 and pgs. 59-60, lns. 21-1.
[54] _Jones v. American Alternative Ins. Corp._, 2014-0367 (La. App. 1st Cir. 1/8/15), 169 So.3d 386, 392.

summarily observed that inattentiveness could not rise to the level of gross negligence "under any scenario" and thus dismissal of her claims was appropriate.[55]

In the case at bar, Tedder-Hairfield had far more than a flashing light attached to the top of the cab of the vehicle as was the case in *Jones*.  Rather, Tedder-Hairfield had activated all of the emergency lights on the Serco vehicle, namely (1) the flashing lights on the rear of the truck bed; (2) the light bar or flashing lights attached to the cab of the truck; and (3) the arrow board raised above the cab with flashing right arrow.  As the photographs imbedded into the earlier portion of this Memorandum show, the light board is almost as wide as the truck and stands several feet above the typical height of any other non-commercial vehicle.  The three warning lights, and their obviously large size and scope, were far greater than the warning lights on the ambulance in *Jones* which were found to be sufficient to warrant the protections of La. R.S. §32:24.  These three distinct warning lights were sufficient to warn numerous other motorists that day.  Moreover, even if Plaintiff alleges that Tedder-Hairfield should have been more attentive to his surroundings or was otherwise negligent for some other reason, such arguments are again insufficient to meet Plaintiff's heavy burden of showing "reckless disregard" or "gross negligence".

Lastly, in *Bullock v. City of Slidell,* the Louisiana First Circuit Court of Appeals again affirmed a trial court's grant of summary judgment for an emergency responder.  In that accident, the plaintiff made a left-hand turn in the path of a police officer who was driving at a high rate of speed in pursuit of a suspect, with his lights and sirens activated. The Court held that although the officer was traveling at a high rate of speed with his lights and sirens activated, he nevertheless exercised due regard for the safety of others and La. R.S. §32:24 applied.  Plaintiff failed to present

---

[55] *Jones v. American Alternative Ins. Corp.*, 2014-0367 (La. App. 1st Cir. 1/8/15), 169 So.3d 386, at 394.

contradictory evidence that would refute this showing or create a material issue of fact, so summary judgment was appropriate.[56]

     *Bullock* makes it clear that even confirmed acts of negligence by the emergency responder – for instance admittedly traveling at an excessive rate of speed – does not remove the emergency responder from the protections of La. R.S. §32:24 once the requirements of the statute are met.  A plaintiff in such a suit, and Plaintiff here, still must come forward with evidence that the emergency responder was guilty of "reckless disregard" or "gross negligence".  If confirmed and excessive speed of travel as was the case in *Bullock* does not meet the "gross negligence" standard, then Tedder-Hairfield's actions in briefly stopping the Serco vehicle in the left travel lane to protect other motorists and himself while he removed the debris from the roadway certainly cannot meet such a high standard.

## IV.   <u>CONCLUSION</u>

     The above cases and analysis clearly show that when authorized emergency personnel meet the three prongs of La. R.S. §32:24, a plaintiff must then fulfill the heightened burden of showing that the emergency personnel committed "reckless disregard for the safety of others" or "gross negligence".  If a plaintiff cannot meet this burden, as is more often than not the case, then summary judgment is appropriate.  Merely showing that the emergency personnel was arguably or even admittedly negligent in some capacity is insufficient.  Merely showing that some law or company policy was violated or arguably was violated is insufficient as well.

     In sum, the actions of Tedder-Hairfield on January 7, 2020 -- being dispatched to the scene to remove road debris as part of Serco Inc's contractual requirements with the La. DOTD, approaching the debris at less than the normal speed limit with all of the Serco vehicle lights and

---

[56] *Bullock v. City of Slidell*, 2015-1363 (La. App. 1 Cir. 2/24/16) 2016 WL 759164, *3, *writ denied*, 2016-0913 (La. 9/6/16), 204 So. 3d 1000.

arrow-board activated, parking in the lane of travel to protect other motorists and himself, and quickly removing the debris from the roadway -- are more than sufficient to show that Plaintiff here cannot meet the enhanced burden of proof that applies to his claim in this matter.

For the foregoing reasons, Serco Inc. ACE American Insurance Company now known as Chubb Insurance and John Tedder-Hairfield respectfully submit that they are entitled to summary judgment in their favor, dismissing the claims of Akeem Holden with prejudice, each party to bear its own costs.

Respectfully submitted,

/s/ Michael B. Guerry
Dean M. Arruebarrena - #24283
Email:  darruebarrena@leakeandersson.com
Michael B. Guerry - #37145
E-mail: mguerry@leakeandersson.com
**Leake & Andersson, L.L.P.**
1100 Poydras Street, Suite 1700
New Orleans, LA  70163-1701
Tel:  504/585-7500
Fax:  504/585-7775
**ATTORNEYS FOR DEFENDANTS
SERCO INC., JOHN TEDDER-HAIRFIELD,
AND ACE AMERICAN INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record through the CM/ECF system on June 21, 2022.

/s/Dean M. Arruebarrena
DEAN M. ARRUEBARRENA

-21-